IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDREW MORALES, | : | Civil No. 3:18-CV-0852 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ANN STANTON, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

# **MEMORANDUM**

This matter comes before the court on Defendants Stanton, Cooper and Wagner's motion for summary judgment. Defendants argue that Plaintiff Andrew Morales fails to demonstrate Defendant Stanton's personal involvement in the opening of his legal mail or that he was subjected to gender discrimination when he was removed from his prison job. (Doc. 33.) Having considered the motion and Plaintiff's response, the court will grant Defendants' motion for summary judgment.

## BACKGROUND

On April 15, 2018, Andrew Morales, a self-represented individual formerly incarcerated at the Snyder County Prison ("SCP"), in Selinsgrove, Pennsylvania, filed this action against three SCP employees: Ann Stanton; Warden Shawn Cooper; and Deputy Warden Adam Wagner (collectively referred to as the "SCP Defendants"). (Doc. 1.) On January 14, 2019, the court (the Honorable Judge

Caputo) granted the SCP Defendants' motion to dismiss and granted Morales leave to file an amended complaint. (Doc. 24.) Morales filed an amended complaint on February 1, 2019. (Doc. 25 at 1–3.) Defendants filed a motion to dismiss the amended complaint. (Doc. 26.) On April 3, 2019, the court partially granted the motion. (Doc. 28.) Morales' claims of verbal harassment and deliberate indifference to his medical needs were dismissed, but his claims of interference with his legal mail and gender discrimination moved forward. (*Id.*) After Defendants filed an answer to the two remaining claims, the court issued a scheduling order calling for the close of discovery in October 2019 and the filing of dispositive motions in November 2019. (Doc. 30.)

On October 18, 2019, Defendants filed a timely motion for summary judgment, supporting brief, statement of material facts and exhibits. (Docs. 33–35.) On February 10, 2020, Morales filed a three-page declaration and two exhibits in opposition to Defendants' motion.[1] (Doc. 36.) Defendants did not file a reply brief.

---

[1] Pursuant to Pa. M.D. Local Rule 7.6, Morales had until November 11, 2019, to file a response to Defendants' summary judgment motion or seek an enlargement of time to do so. His February 2020 submission is untimely and without leave of court. Additionally, Morales' declaration does not conform to the Local Rules which require him to cite to portions of the record to support his statements. *See* Pa M.D. Local Rule 56.1 and Fed. R. Civ. P. 56. Nonetheless, given Morales' *pro se* status, the court will deem his submission timely and construe it as his brief in opposition to Defendants' summary judgment motion. Finally, because Morales has not filed a response to Defendants' statement of material facts, the court deems

2

## FACTUAL BACKGROUND

### A. The Parties

At all times relevant to this action, Defendants Ann Stanton, Shawn Cooper and Adam Wagner were employed by SCP. Shawn Cooper served as the Warden, Adam Wagner served as the Deputy Warden, and Ann Stanton served as the Inmate-Attorney Liaison. (Doc. 35-1, p. 1; Doc. 35-2, p. 1; Doc. 35-3, p. 1.) Morales was a pretrial detainee while incarcerated at SCP from April 3, 2017, until April 24, 2018. (Doc. 35-1, p. 4.) Morales is presently a state inmate housed at the Coal Township State Correctional Institution in Coal Township, Pennsylvania. *See* *http://inmatelocator.cor.pa.gov* (last visited Sept. 1, 2020).

### B. Morales' Legal Mail

On October 25, 2017, Defendant Stanton delivered two pieces of Morales' outbound legal mail that were returned to the prison unsealed (i.e. opened). The letters were "to [his] lawyer … [and] the Snyder County Clerk of Courts." (Doc. 25, p. 4.) When the returned legal mail arrived at the prison, Defendant Stanton, in her role as SCP's Inmate-Attorney Liaison was asked to, and did, hand deliver the returned legal mail to Morales. (Doc. 35-1, p. 2; Doc. 35–2, p. 2.) The day she delivered the mail to Morales he filed a request slip inquiring as to "who opened

---

admitted the facts submitted by the Defendants. *See* Fed. R. Civ. P. 56(e); *see also* Pa. M.D. Local Rule 56.1.

[his] mail." (Doc. 35–2, p. 5.) Defendant Stanton denies opening Morales' legal mail. (Doc. 35–2, p. 2.)

### C. SCP's November 2017 Decision to Switch Inmate Kitchen Workers to an All-Female Cadre

The first week in November 2017 was the last time Morales worked in SCP's kitchen. (Doc. 35–1, p. 5; Doc. 35-3, pp. 5–6, 17–18.) He claims he was removed from his job "for no reason." (Doc. 35–3, p. 19.)

SCP policy prohibits male and female inmates from working in the kitchen at the same time. SCP asserts that this policy aims to serve many important penological objectives. One aim is to minimize the risk of inmate-on-inmate sexual harassment and improper fraternization. (Doc. 35–1, pp. 6–7; Doc. 35–3, pp. 5–6.) Security concerns also guide this practice. Assigning only male or female inmates to work in the kitchen results in all kitchen workers living in one of two housing units. Because kitchen knives and other items within the kitchen may be fashioned into weapons, housing all kitchen workers in one place limits where such contraband may be secreted, enhancing the overall security of the institution, staff, and inmates. Staffing and budgetary demands also support the practice of separating male and female inmate workers in the kitchen. Due to their schedule, kitchen workers receive evening recreation. SCP provides separate recreation areas for male and female inmates. Allowing both male and female inmates to

work simultaneously in the kitchen would require additional evening staff to monitor the second recreation yard in order to provide all workers an equal opportunity to recreate.  (Doc. 35–1, pp. 6–8; Doc. 35–3, pp. 6–8.)

In the Fall of 2017, only male inmates worked in the kitchen.  Morales was one of the mail inmates working in the kitchen in that time period.  During that time, kitchen staff experienced serious problems with the male inmate workers.  These problems included episodes of theft and property destruction.  At the same time, the prison faced an overall decline in the number of male inmates eligible for employment, and an increase in the number of female inmates eligible for employment.  On November 13, 2017, Warden Cooper and Deputy Warden Wagner decided to remove the male inmates from the kitchen and replace them with female inmates.  The decision was intended to eliminate the existing disciplinary concerns with the male inmates working in the kitchen, while simultaneously providing more employment opportunities for the growing number of work-eligible female inmates.  (Doc. 35–1, pp. 4–5; Doc. 35-3, pp. 5–6.)

## JURISDICTION

The court has federal question jurisdiction over the remaining claims in Morales' amended complaint.  *See* 28 U.S.C. § 1331.  Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at

the Snyder County Prison located in Selinsgrove, Pennsylvania, which is in this district.  *See* 28 U.S.C. § 1391(b)(2).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for the grant of summary judgment.  Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law, and is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same.  *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact.  *See Celotex*, 477 U.S. at 324.  "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of

6

material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322–23. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## DISCUSSION

Morales asserts two claims under 42 U.S.C. § 1983. First, Morales argues that Stanton interfered with his legal mail by opening it outside of his presence. Next, he claims Warden Cooper and Deputy Warden Wagner violated his equal protection rights by removing him from his prison job solely based on his gender. (Doc. 25.)

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

42 U.S.C. § 1983. Therefore, to succeed on his claims, Morales must establish two elements: (1) a violation of a right secured by the Constitution or laws of the United States; and (2) that the constitutional deprivation was caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1998); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Conduct not connected to a constitutional violation is not actionable under Section 1983. "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Moreover, "[b]ecause vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

### A. Morales Fails to Allege Defendant Stanton's Personal Involvement in the Opening of His Legal Mail

Defendant Stanton moves for motion for summary judgment on Morales' mail interference claim due to his failure to demonstrate her personal involvement in the alleged unconstitutional conduct. Morales claims his outgoing legal mail was opened outside of his presence and returned to him on several occasions. However, he only alleges that Stanton was involved in the mail-opening incident on October 25, 2017. On that one occasion, Morales states that Stanton returned his outgoing legal mail, and that someone had opened it outside of his presence.

Defendant Stanton submits a signed affidavit under the penalty of perjury in conjunction with her motion for summary judgment. She affirms that she did not open Morales' outgoing legal correspondence to his attorney or the court. (Doc. 35-2.) Morales' declaration in opposition to Defendants' motion, also submitted under penalty of perjury, fails to offer citations to the record, applicable law or any supporting evidence for the court's consideration as to why he "disagrees" with Defendant Stanton's statement. (Doc. 36.) Rather, he asks that the court not "decide [Defendants' motion] on paper," as he wants exercise his "right to cross examine the defendants and bring [his] evidence into the court to fully prove [his] case." (*Id.*) He does not describe what "evidence" he holds to support his claim against Stanton.

Morales cannot rely on unsupported and unspecified factual allegations to meet his burden on summary judgment. *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) ("In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on the assertions made in the pleadings, legal memoranda, or oral argument."). Morales must show, beyond the facts alleged in his pleading, "that there *is* a genuine issue for trial." *Daubert v. NRA Grp., LLC.*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Celotex*, 477 U.S. at 324) (emphasis in *Daubert*). Morales has not met that burden with respect to his legal mail claim against Stanton. Even when viewing the record in the light most favorable to Morales, no reasonable juror could find that Stanton was personally involved in opening Morales' legal mail outside of his presence. As such, summary judgement will be entered on behalf of Stanton with respect to this claim.

### B. Defendants Cooper and Wagner did not violate Morales' Equal Protection Rights

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)

10

(quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  To establish a *prima facie* case of discrimination under the Equal Protection Clause, a plaintiff must show "that he was treated differently than other similarly situated intimates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class."  *Mack v. Warden Loretto* FCI, 839 F.3d 286, 305 (3d Cir. 2016); *see also McCleskey v. Kemp*, 481 U.S. 279, 292 (1987) ("Thus, to prevail under the Equal Protection Clause, [Plaintiff] must prove that the decisionmakers in *his* case acted with discriminatory purpose.") (emphasis in original).

Claims for equal protection violations are subject to differing levels of scrutiny depending on the nature of the complainant's classification.  *Artway v. Attorney General of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996).  "[I]f a law neither burdens a fundamental right nor targets a suspect class," it does not violate the Fourteenth Amendment's Equal Protection Clause "so long as it bears a rational relationship to some legitimate end."  *Romer v. Evans,* 517 U.S. 620, 631 (1996). Laws that use classifications based on race, religion, national origin, religion, alienage, and gender, are subject to "strict scrutiny," and must be narrowly tailored to serve a compelling interest.  *See A.H. by Handling v. Minersville Area School District*, 290 F. Supp.3d 321, 331 (M.D. Pa. 2017) ("Classifications based on gender … call for a heightened standard of review and such a classification will

11

fail[ ] unless it is substantially related to a sufficiently important governmental interest.") (internal citations omitted). However, the differential treatment of similarly situated persons is permitted if "the classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982) (internal quotations and citations omitted); *see also Dinote v. Danberg*, 601 F. App'x 127, 130 (2015) (same).

Morales alleges Defendants Cooper and Wagner removed him from his kitchen job "for no reason" and replaced the male inmate workers with female inmate workers. (Doc. 25, p. 8.) Since Morales' equal protection claim is based on his gender, the court will employ a strict scrutiny standard of judicial review.

Defendants do not dispute that Morales was removed from his kitchen job in November 2017, as were all male kitchen inmate workers, due to his gender. However, Defendants Cooper and Wagner cite legitimate security concerns to support their practice of not permitting male and female inmates to work together in the kitchen. *See Fraise v. Terhune,* 283 F.3d 506, 517–18 (3d Cir. 2002) (finding security to be a legitimate penological interest). Moreover, even if the policy has a discriminatory effect, Morales has not shown that the Defendants intended such a result. The policy of prohibiting male and female inmates to work together in the kitchen is the type of decisions courts must evaluate with substantial

12

deference. *See Overton v. Bazetta*, 539 U.S. 126, 132 (2003) (courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.") Based on the uncontested record before the court, Morales has failed to show that he was treated differently from other male inmate kitchen workers when they were all removed from their jobs in the prison kitchen. Accordingly, Defendants Cooper and Wagner are entitled to summary judgment as to this claim.

## CONCLUSION

For the foregoing reasons, SCP Defendants' motion for summary judgment is granted.[2]  An appropriate order follows.

s/ Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Court Judge<br>
Middle District of Pennsylvania

Dated:  September 1, 2020

---

[2] Having concluded that dismissal is warranted for other reasons, the court does not address SCP Defendants' administrative exhaustion or qualified immunity arguments.